IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**TOP JET ENTERPRISES, LTD.,**

    Judgment-Creditor,

v.

**SINO JET HOLDING LTD.,
SKYBLUEOCEAN LTD., JET
MIDWEST GROUP, LLC,**

    Judgment-Debtors.

Case No. 21-mc-201-DDC-TJJ

### **MEMORANDUM AND ORDER**

This matter is before the Court on three related motions: Top Jet Enterprises, Ltd.'s ("Top Jet") Motion to Compel Compliance [of Jet Midwest, Inc.] with Subpoena (ECF No. 23); Jet Midwest, Inc.'s ("JM Inc.") Motion for Order Quashing and/or Modifying Subpoena or, in the Alternative, for a Protective Order (ECF No. 27); and JM Inc.'s Motion for Order Quashing Subpoenas for Bank Account Records and/or for a Protective Order (ECF No. 28). Top Jet has an $87.2 million judgment against Jet Midwest Group, LLC ("JMG"), Skyblueocean Ltd. ("Sky"), and Sino Jet Holding Ltd. ("Sino Jet"), and this case is part of an effort to collect that judgment. JM Inc. is not a judgment-debtor in the underlying case. Because JM Inc.—to whom the subpoenas are directed (in the case of the bank subpoenas, indirectly)—is a third-party, the resolution of all three motions depends on the scope of discovery allowed from a third-party in a post-judgment proceeding.

As the Court began reviewing these motions, it learned that JMG—one of the judgment-debtors in the underlying case—filed for bankruptcy on September 13, 2021.[1] The Court became concerned about the JMG bankruptcy proceeding and the critical question of whether the automatic stay in bankruptcy extends to this case.[2] Given the complexity of the actual and/or alleged interrelationships between and among the parties in this case, JMG, JM Inc. and others, the Court ordered the parties to show cause why the automatic stay in the JMG bankruptcy proceeding does not require the Court to stay this case—including specifically the subpoenas to JM Inc. and its banks, that are the subjects of the motion to compel and related motions to quash. Top Jet timely responded to the Court's Order, and the Court is now prepared to address the issue of the bankruptcy's impact on this case.

## I. The Law Regarding the Automatic Stay in Bankruptcy

When a debtor files for bankruptcy, the automatic stay is triggered.[3] Under the protection of the stay, the continuation of actions or proceedings against the debtor is prohibited.[4] Further prohibited under the automatic stay is "any act to obtain possession of property of the estate" and "any act to collect, assess or recover a claim against the debtor."[5] The stay ensures the debtor's affairs will be managed and centralized in one forum, rather than risking conflicting judgments

---

[1] *In re Jet Midwest Group, LLC*, No. 1:21-bk-11524, United States Bankruptcy Court for the Central District of California.

[2] Top Jet's motion to compel references JM Inc. as an "affiliate of the Judgment-Debtors . . . JMG and . . . Sky." ECF No. 23 at 1.

[3] 11 U.S.C. § 362(a).

[4] *Id*. § 362(a)(1).

[5] *Id*. § 362(a)(2) and (6).

in various courts.[6] It offers broad protection for the bankrupt debtor, but generally the stay does not shield non-debtor litigants, even when transactions in question involve the debtor.[7] "[T]he automatic stay does not, in general, apply to actions against parties who enjoy factual or legal relationships with a debtor, such as a debtor's wholly owned subsidiaries."[8] If an action involves both a bankrupt debtor entitled to the protections of the automatic stay and other parties not entitled to the protections of the stay, a court may sever the parties and continue the action as to the non-bankrupt parties.[9]

However, the automatic stay <u>does</u> apply to non-debtor third-parties if the action against them is, in actuality, a cloaked attempt to find assets of the bankrupt debtor. The automatic stay halts discovery designed to identify alleged fraudulent transfers from the bankrupt debtor.[10] "[A]

---

[6] *In re Curtis*, 40 B.R. 795, 798 (Bankr. D. Utah 1984).

[7] *See Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984) ("The language of [11 U.S.C. § 362] extends stay proceedings only to actions 'against the debtor.' There is nothing in the statute which purports to extend the stay to causes of action against solvent co-defendants of the debtor.") (citing cases including *Pitts v. Unarco Indus., Inc.*, 698 F.2d 313, 314 (7th Cir. 1983) ("The clear language of Section 362(a)(1) thus extends the automatic stay provision only to the debtor filing bankruptcy proceedings and not to non-bankrupt co-defendants.")).

[8] *See In re Panther Mt. Land Dev., LLC*, 686 F.3d 916, 923 (8th Cir. 2012) (quoting *Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007) ("It is a fundamental precept of corporate law that each corporation is a separate legal entity with its own debts and assets, even when such corporation is wholly owned by another corporate entity. . . . [A] judgment against [a debtor's wholly owned subsidiary] imposes no obligations or liability on [the debtor, who] therefore cannot be accurately described as the real-party defendant in the suit . . . .")).

[9] *See Croyden Assocs. v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir. 1992) (holding that stay extended only to claims against debtor—not non-bankrupt defendants—"even if they are in a similar legal or factual nexus with the debtor"); *cf. In re Miller*, 262 B.R. 499, 503 (B.A.P. 9th Cir. 2001) (holding that a debtor in bankruptcy was not protected from discovery designed to develop a case against a non-debtor party).

[10] *See In re MortgageAmerica Corp.*, 714 F.2d 1266, 1278 (5th Cir. 1983); *Cedarbrook Plaza, Inc. v. Gottfried*, No. CIV. A. 97-1560, 1997 WL 330390, at *8 (E.D. Pa. June 6, 1997) ("The

third-party action to recover fraudulently transferred property is properly regarded as undertaken 'to recover a claim against the debtor' and subject to the automatic stay pursuant to § 362(a)(1)."[11] In other words, "the automatic stay provision outlined by section 362(a)(6) of the United States Bankruptcy Code invalidates [a] subpoena to the extent that it solicits information that is intended to assist Plaintiff in its efforts to 'collect, assess or recover a claim against'" a debtor in bankruptcy.[12] The logic behind the protection of the stay is equitable in nature: to give all creditors the same opportunity to fairly share in any assets the bankruptcy trustee distributes.[13]

---

automatic stay prohibits Cedarbrook from initiating, after the filing of a bankruptcy petition, a third-party action against Gottfried to recover fraudulently transferred property. Such an action is both one 'to recover a claim against the debtor' and 'to obtain possession of property of the estate' as contemplated by §§ 362(a)(1) and (a)(3)."); *see also Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708–09 (7th Cir. 1994) ("[T]he right to recoup a fraudulent conveyance, which outside of bankruptcy may be invoked by a creditor, is property of the estate that only a trustee or debtor in possession may pursue once a bankruptcy is under way."); *In re C.D. Jones & Co.*, 482 B.R. 449, 458 (Bankr. N.D. Fla. 2012) ("This Court agrees that creditors' fraudulent transfer claims belong to the Trustee under the strong-arm powers of Section 544 and are property of the estate once the case is filed."); *In re Zwirn*, 362 B.R. 536, 539 (Bankr. S.D. Fla. 2007) ("[S]uch [fraudulent transfer] claims are property of the estate as of the petition date, and [] they are solely within the power of a bankruptcy trustee to commence and prosecute under the facts of this case.").

[11] *In re Colonial Realty Co.*, 980 F.2d 125, 131–32 (2d Cir. 1992).

[12] *E. Aaron Enters., Inc. v. WebPlus, Inc.*, No. 2:07-CV-0585-LDD, 2009 WL 10640571, at *2 (E.D. Pa. Mar. 31, 2009); *see also Virginia Brands, LLC v. Kingston Tobacco Co.*, No. 4:10CV00009, 2013 WL 1249070, at *8 (W.D. Va. Mar. 26, 2013) ("The bankruptcy stay mooted the issue of further Rule 69 discovery in aid of execution of the judgment.").

[13] *See In re MortgageAmerica Corp.*, 714 F.2d at 1277–78.

## II.     Legal Analysis

JM Inc. argues that the subpoenas at issue here violate the automatic stay because Top Jet is using them to aid its efforts to collect its judgment against JMG. If Top Jet were to uncover fraudulent transfers from JMG in this case and execute on them, Top Jet would receive an unfair advantage related to JMG's other creditors, who are awaiting equitable distributions from the trustee.

Indeed, when Top Jet filed this case, it represented that its subpoena to JM Inc. sought to discover the location of "Debtor assets and sales proceeds, the role that insiders played in transferring assets, and potential litigation claims that could be assets of the Judgment Debtors or their creditors."[14] Top Jet urged this Court to compel compliance with the subpoena because "JMG is controlled by the same individuals who control JM Inc., and (as a federal court has already determined) those people intermingled funds between JMG and JM Inc."[15] Top Jet issued the subpoenas for the purpose of "'developing veil piercing, alter ego, or other collection claims against th[e] owners, officers and other insiders' of JMG, Sky and JM Inc."[16] In fact, much of Top Jet's initial briefing focused on the relationship between JMG and JM Inc., fraudulent transfers from JMG via JM Inc., and how the JMG-JM Inc. relationship and those fraudulent transfers justified the third-party subpoenas.[17]

---

[14] ECF No. 23 at 2.

[15] *Id.* (citing Western District of Missouri Case No. 5:18-cv-06019-FJG, Dkt. No. 699, e.g., Findings of Fact ¶¶ 141-142, 183, 363; Conclusions of Law ¶ 285).

[16] ECF No. 33 at 6 (quoting JM Inc.'s Response to the Motion to Compel, ECF No. 26 at 3); 23-2 at 10 (emphasis added).

[17] *See, e.g.*, ECF No. 23 at 1 ("The arbitral award also explains that JMG and Sky used JM Inc. as an instrumentality in committing misconduct against Top Jet."); ECF No. 23 at 2 ("Top Jet

However, when the Court ordered Top Jet to show cause why this action shouldn't be stayed given JMG's bankruptcy, Top Jet wholly changed its position. In its response, Top Jet argues "Top Jet can investigate potential assets to satisfy the judgment against Sino Jet and Sky."[18] Top Jet argues that the bankruptcy stay does not apply here because "the Subpoenas seek documents regarding the location of the Consigned Goods and the sale proceeds held by JM Inc.—property that belongs to Sino Jet, not JMG."[19] In other words, Top Jet attempts to shift the focus from JMG to Sino Jet, now arguing that it seeks information about the location of

---

seeks the documents [subpoenaed] to assist in the collection of its Judgment against JMG and Sky . . . ."); ECF No. 23 at 6 ("Top Jet needs to know what happened to millions of dollars of Consigned Goods under the control of JM Inc.—were they transferred to JMG, Sky and their owners and insiders?"); ECF No. 33 at 4 ("JMG and Sky used JM Inc. as an instrumentality in committing misconduct against Top Jet."); ECF No. 33 at 5 ("In a related fraudulent transfer action, . . . the Missouri Federal Court found that JMG shares overlapping management with JM Inc., and that JMG used JM Inc. as a means to fraudulently transfer millions upon millions of dollars to its insiders. The Missouri Federal Court also found that JMG fraudulently transferred funds via JM Inc. to frustrate the collection efforts of another judgment creditor, and that JMG's CEO and owner, Paul Kraus, intermingled funds between JMG and JM Inc."); ECF No. 33 at 7 ("the Missouri Federal Court issued a judgment finding $41 million in fraudulent transfers between JMG and its insiders, and specifically found that certain fraudulent transfers were funneled through JM Inc."); ECF No. 33 at 8 ("Likewise, Paul Kraus, an owner of both JMG and JM Inc., was found to have intermingled funds between both JMG and JM Inc."); ECF No. 33 at 10 ("In contrast to both the Platte County Proceeding and the Confirmation Proceeding, the Subpoena (and this proceeding) are aimed at seeking information about JM Inc.'s financial information for the purpose (as acknowledged by JM Inc.) of 'developing veil piercing, alter ego, or other claims against th[e] owners, officers and other insiders' of JMG, Sky and JM Inc. . . . As noted above, JM Inc. was found to have been used to facilitate fraudulent transfers to the owners/insiders of JMG and/or Sky, and the owners/insiders of JM Inc. were found to have intermingled its funds with affiliates such as JMG.").

[18] ECF No. 44 at 2.

[19] *Id*. at 4.

Consigned Goods and/or their proceeds, which were consigned to JM Inc. on behalf of Sino Jet.[20]

The Court finds, as Top Jet argued in its briefing prior to the filing of its response to the show cause order, that Top Jet seeks to utilize the subpoenas at issue here to assist in the collection of its judgment against JMG. Top Jet's initial briefing makes this clear as a bell[21] and, having rung that bell vigorously, Top Jet cannot un-ring it no matter how hard it tries to re-focus attention on Sino Jet. The Court further finds that the subpoenas at issue, if enforced, would violate the automatic stay.[22] This the Court cannot allow.

Nor will the Court allow Top Jet to circumvent the intent and purpose of the automatic stay by supposedly re-focusing its efforts on Sino Jet. Top Jet cannot utilize Sino Jet as the basis to justify asking JM Inc.—a non-debtor and a third-party—about its financial records unless it can make a heightened showing of necessity and relevance, like fraudulent transfers or an alter-ego relationship. Top Jet has made no such showing with respect to *Sino Jet*.[23] As noted above,

---

[20] It is worth noting that the requests in Top Jet's subpoena to JM Inc. are much broader than suggested in Top Jet's response to the order to show cause. They would be considered broad even if Top Jet were able to justify the requests by trying to find hidden JMG assets. But they are exceedingly broad if viewed through the lens Top Jet suggests in the order to show cause response of seeking to ascertain what happened to Sino Jet's assets by use of JM Inc.'s financial records.

[21] *See supra* n.18.

[22] *E. Aaron Enters. Inc.*, 2009 WL 10640571, at *2; *see also Nat'l Tax Credit Partners, L.P.*, 20 F.3d at 708–09; *In re MortgageAmerica Corp.*, 714 F.2d at 1278; *In re Colonial Realty Co.*, 980 F.2d at 131–32; *Virginia Brands, LLC*, 2013 WL 1249070, at *8; *Cedarbrook Plaza, Inc.*, 1997 WL 330390, at *8; *In re C.D. Jones & Co.*, 482 B.R. at 458; *In re Zwirn*, 362 B.R. at 539.

[23] In fact, Top Jet overtly denies any close relationship between JMG and Sino Jet. *See* ECF No. 44 at 4 n.1 ("There is no evidence that there is such an identity between Sino Jet and JMG that JMG may be said to be the real party defendant in relation to Top Jet's enforcement efforts against Sino Jet."). Arguably, Top Jet has made some level of such allegations against Sky

all of Top Jet's allegations of fraudulent transfers relate to JMG (and, to a much lesser extent, Sky), not Sino Jet.

In *Hartford Fire Ins. Co. v. P & H Cattle Co.*, Judge Waxse explained the scope of post-judgment discovery:

> The law allows judgment creditors to conduct full post-judgment discovery to aid in executing a judgment. The broad scope of postjudgment discovery permits a judgment creditor to discover assets of the judgment debtor upon which execution may be made. Discovery is also allowed to find out about assets that have been fraudulently transferred or are otherwise beyond the reach of execution, as well as information "which could reasonably lead to the discovery of concealed or fraudulently transferred assets."[24]

But this standard applies to discovery of the debtor and its assets; not third parties and their own assets. "[T]hird parties generally may be examined only about the judgment debtor's assets and cannot be required to disclose their own assets."[25] "[D]iscovery has been allowed against a non-judgment debtor upon a somewhat heightened showing of necessity and relevance—i.e., at least

---

(never individually against Sky, but always rolling Sky in with a discussion of JMG), but now Top Jet represents that its whole purpose in issuing the subpoenas is to find the property of Sino Jet—not JMG or Sky.

[24] No. CIV.A. 05-2001-DJW, 2009 WL 2951120, at *7 (D. Kan. Sept. 10, 2009).

[25] *Id.*; *Matthias Jans & Assocs., Ltd. v. Dropic*, No. 01-MC-26, 2001 WL 1661473, at *2 (W.D. Mich. Apr. 9, 2001) ("The scope of discovery against third parties is therefore generally limited to 'the financial affairs of the judgment debtor.' Third parties should not be required to disclose their own assets.") (citing *Caisson Corp. v. County West Building Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974); *Costamar Shipping Co. v. Kim-Sail, Ltd.*, No. 95 civ. 3349, 1995 WL 736907, at *2 (S.D.N.Y. Dec. 12, 1995)); 12 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 3014 Discovery in Aid of Execution (3d ed.) ("Ordinarily third persons can be examined only about the assets of the judgment debtor and cannot be required to disclose their own, although probing questioning is allowed with regard to third parties with close ties to the judgment debtor.").

some demonstration of concealed or fraudulent transfers or alter ego relationship with the judgment debtor."[26]

The problem with Top Jet's "Sino Jet" argument in its response to the Court's order to show cause is this: In changing its position, Top Jet failed to demonstrate why, in the absence of allegations of fraudulent conveyances by Sino Jet to JM Inc., it should be able to inquire about JM Inc.'s financial records at all.

Top Jet must have a reason independent of JM Inc.'s connection to JMG to compel production of JM Inc.'s own records from JM Inc. and its banks. Yet, Top Jet has not presented an independent reason or a heightened showing of necessity and relevance as required by *Hartford Fire Ins. Co*. Although now Top Jet claims it is trying to use JM Inc. to gather information to collect money from Sino Jet, it has not offered any evidence suggesting that Sino Jet might be an alter ego of JM Inc. or might have been fraudulently shifting assets to or from JM Inc. The Court therefore finds there is no basis on which to allow pursuit of discovery from the third-party, in this case JM Inc., about its own assets or financial records.

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[27] Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "subjects a

---

[26] *Hartford Fire Ins. Co.*, 2009 WL 2951120, at *7; *see also Compania de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua, S.A.B. de C.V.*, No. 1:15-CV-02120-JLK, 2019 WL 8223561, at *3 (D. Colo. Dec. 31, 2019) ("[A] judgment creditor may seek discovery about a third party with close ties to the judgment debtor in efforts to discover hidden or concealed assets of the judgment debtor."); *Costamar Shipping Co.*, 1995 WL 736907, at *3 (quoting *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977) (further citation omitted)).

[27] Fed. R. Civ. P. 45(d)(1).

person to undue burden."[28] Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[29]

Requiring JM Inc. and its banks to respond to the subpoenas issued by Top Jet in violation of the automatic stay would obviously subject them to undue burden. And, to the extent Top Jet claims it is trying to find assets of Sino Jet, requiring JM Inc., a non-party without any apparent alter-ego or nefarious connection to Sino Jet, or its banks to respond to the Top Jet subpoenas would subject them to undue burden. For all these reasons, the Court finds the subpoenas to represent an undue burden and quashes all three of the subpoenas at issue.

**IT IS THEREFORE ORDERED** that, because of the automatic stay in the JMG bankruptcy, Top Jet's Motion to Compel Compliance with Subpoena (ECF No. 23) is denied; JM Inc.'s Motion for Order Quashing and/or Modifying Subpoena or, in the Alternative, for a Protective Order (ECF No. 27) is granted; and JM Inc.'s Motion for Order Quashing Subpoenas for Bank Account Records and/or for a Protective Order (ECF No. 28) is granted.

**IT IS SO ORDERED**.

Dated this 3rd day of February, 2022 in Kansas City, Kansas.

Teresa J. James
U.S. Magistrate Judge

---

[28] Fed. R. Civ. P. 45(d)(3)(A)(iv).

[29] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).